IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VINNIE J. McDONALD,               )
               Plaintiff,        )
                          )        C.A. 05-0901
      v.                           )
                          )        Judge Cercone
OFFICER KEVIN B. FOLTZ and        )        Magistrate Judge Lenihan
ROCHESTER TOWNSHIP,               )
               Defendants.       )        Re: Doc. No. 10


## AMENDED REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is recommended that the Defendants' Motion for Summary Judgment at Doc.

No. 10 be granted insofar as it relates to Plaintiff's claims filed pursuant to the Fourteenth

Amendment Substantive Due Process Clause, the Equal Protection Clause, First Amendment

Retaliation claim, Fourth Amendment Malicious Prosecution claim, and Municipal Liability.  It

is also recommended that Defendants' Motion for Summary Judgment at Doc. No. 10 be denied

insofar as it relates to Plaintiff's claims of warrantless entry, excessive force, and false arrest

filed pursuant to the Fourth Amendment.


II.     REPORT

        On November 20, 2006, this Court filed its Report and Recommendation (Doc.

No. 14) on Defendants' Motion for Summary Judgment (Doc. No. 10.)  On December 5, 2006,

Defendants timely filed their Objections (Doc. No. 15) pursuant to the Magistrate's Act, 28

U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates.  After

careful review of Defendants' Objections, this Court files this Amended Report and

Recommendation modifying its original Report and Recommendation as follows: Defendants'

Motion for Summary Judgment should also be granted as it relates to Plaintiff's Malicious

Prosecution claim filed pursuant to 42 U.S.C. § 1983 alleging a Fourth Amendment violation for

the reasons that follow at Section C. 1. d., infra.

Plaintiff, Vinnie J. McDonald ("Plaintiff" or "McDonald"), filed this action

pursuant to 42 U.S.C. § 1983 alleging violations of her First, Fourth and Fourteenth Amendment

rights.  Specifically, Plaintiff avers that Defendant Officer Kevin B. Foltz ("Officer Foltz")

subjected her to excessive force, unlawful entry and arrest, and malicious prosecution, and that

these actions were taken in retaliation for the exercise of her First Amendment rights.

(Complaint ¶ 63.)  Plaintiff further alleges that Defendant Rochester Township ("the Township")

is liable for failing to supervise, discipline, or properly train Foltz who allegedly had been the

subject of prior complaints of constitutional misconduct.  (Complaint ¶ 62.)  In addition, Plaintiff

avers that this Court has supplemental jurisdiction over pendant state law claims, although no

specific state law claims are set forth in the Complaint.  (Complaint ¶ 4.)

A.    Facts

Unless otherwise indicated, the undisputed facts of record are as follows:

1.    Facts related to arrest of Plaintiff

On June 21, 2004, Officer Foltz received a report from the mother of an

adolescent who had allegedly been bitten by a dog on Plaintiff's property on June 18, 2004.  The

mother, personally reporting the incident, told Officer Foltz that she had not reported the alleged

dog bite sooner because initially, she did not think that the bite was "that bad."

The parties dispute whether the dog bite actually occurred.  Officer Foltz states

that he observed a dog bite on the upper right leg of the adolescent child and observed that the

skin was broken and the area appeared to be irritated and possibly infected.[1]  Conversely, Plaintiff contends that Plaintiff's dogs only chased the adolescent trespassers from Plaintiff's residence, and that the dog warden testified in July of 2004 that the dogs did not bite the adolescents and there were no visible marks.  Plaintiff's daughter, Anita Williams ("Williams"), testified that these adolescents were her schoolmates who came to Plaintiff's house uninvited on June 18, 2004.  Williams further testified that both schoolmates indicated that the dogs did not bite them, but that one of their cell phones was broken during the chase.  Plaintiff testified that on June 21, 2004, the mother who reported the dog bite to Officer Foltz, telephoned Plaintiff and Williams while grocery shopping and demanded $186.00 for the broken cell phone.  Plaintiff refused to pay and the adolescent daughter again admitted that the dogs did not bite her.  Plaintiff testified that she returned home from the grocery store around 5:50 p.m. and that Officer Foltz arrived at approximately 5:52 p.m. while Plaintiff was putting away her groceries.  Plaintiff testified that she was expected at her sister in law's at 6:00 p.m. to pick up her handicapped niece whom Plaintiff was babysitting.

The parties agree that Officer Foltz arrived at Plaintiff's residence at 5:52 p.m. to determine whether the dog in question was properly vaccinated.  Foltz stated that he believed that it was necessary and appropriate to require Plaintiff to produce proof of vaccination because of the condition of the girl's leg and to determine whether she was at risk for contracting rabies. When Officer Foltz arrived at the house, he knocked on the side door and was told by Plaintiff's daughter, Williams, to go to the front door.  Plaintiff then met Foltz in the front yard and asked

---

[1]At Exhibit A-1 to Defendant's Motion for Summary Judgment, Defendants attach a photograph of the child's leg at the time and represent that the photograph accurately depicts the condition of the child's leg at the time of Officer Foltz's observation.

3

for the rabies vaccination papers for the dog.  After Plaintiff stated that she did not believe the

dog had bitted anyone and that the girl did not have permission to be on the property, Officer

Foltz stated that "that does not matter right now."  Plaintiff told Foltz that she had to be

somewhere by 6:00 p.m., and after further insistence by Foltz that she look for the papers,

Plaintiff told him "I really have to go . . . but I'll come back and look for these papers and I'll

bring them to you."  (Defendants' Concise Statement of Material Facts, Doc. No. 11 at ¶¶ 9-15,

admitted by Plaintiff at Plaintiff's Response to Defendants' Motion for Summary Judgment,

Doc. No. 13-1 .)

       It is at this juncture that the parties' versions of the facts again diverge.

Plaintiff testified that she believed that at this point, her conversation with Officer Foltz had

concluded, and that her offer to bring him the papers later that day was acceptable.  Plaintiff then

turned to walk back inside her house and shut the door behind her.  Plaintiff indicated that Foltz,

immediately and without warning, forced Plaintiff's front door open.  According to Plaintiff, the

door "flew open," sent her flying backward where she hit a chair, and Plaintiff grabbed Foltz's

arm to prevent herself from hitting the floor.  Plaintiff asserts that she weighs 118 lbs. while

Officer Foltz weighs approximately 300 lbs.  Plaintiff testified that she immediately let go of

Foltz's arm.  Plaintiff further testified that at this moment, she and Foltz were on opposite sides

of the door, with Foltz pushing the door in, and Plaintiff pushing the door closed.  Plaintiff

testified that the door was open about a foot and a half.  Plaintiff's daughter testified that she

witnessed the events and saw Foltz's leg pressed against the door, and that his foot was inside

the house and on the carpet.  Williams further testified that Foltz's left shoulder and arm were

also inside the house and his hand was pressed against the door window.  Williams indicated that

she saw her mother putting her weight upon the door and asking Foltz, "What are you doing?" According to Plaintiff's deposition testimony, the pushing continued for a few minutes during which time Plaintiff's daughter became frightened, telephoned 9-1-1, handed the phone to Plaintiff, and Plaintiff reported Foltz's conduct as she held on to the door.  Plaintiff testified that the 9-1-1 operator told her that another officer was coming.  Upon the arrival of the second officer, Plaintiff moved back from her door.  Foltz then entered the house, grabbed Plaintiff, threw her down, striking her upper chest into her table/chair and her knees struck the floor.  The telephone flew out of her hands and Foltz handcuffed her.  According to Plaintiff's deposition testimony, Foltz stated for the first time that she was under arrest at the time he handcuffed her. Plaintiff testified that Foltz told her that she was under arrest for hitting him.  Plaintiff's daughter testified that Foltz said Plaintiff was under arrest when he was handcuffing her in her house. Williams further testified that Foltz said he was "going to get her for disorderly conduct." Plaintiff testified that at no time did she swear at Officer Foltz.

According to Defendant Foltz, he continued to ask Plaintiff for the vaccination records and indicated that he was not finished speaking with her at the time she turned to go back into her house.  Defendant contends that Plaintiff attempted to close the door on him but that his hand and foot prevented her from doing so.  He indicated that Plaintiff grabbed and pushed Foltz's right arm.  According to Foltz, he then informed Plaintiff that she was under arrest. Defendant then sets forth the transcript of the 9-1-1 call wherein Plaintiff, attempting to relay the unfolding events and background circumstances to the 9-1-1 operator, states that "and now he's

saying I'm under arrest."[2]  Officer Foltz stated in his Affidavit that he "believed that Ms.
McDonald had engaged in disorderly conduct through her yelling and repeated use of obscene
language in the front yard, porch and front door areas."  (Affidavit of Kevin Foltz, Doc. No. 10-4
at ¶ 30.)

   Thereafter, the parties agree to the following:  Plaintiff was placed in the back
seat of Foltz's patrol vehicle.  She began complaining of chest pains and Foltz called the County
to request an ambulance.  Plaintiff was then placed in the second officer's vehicle.  Upon arrival
of the ambulance, Plaintiff was evaluated and cleared.  She was then placed back into the second
officers's vehicle.  Foltz and the police chief determined that the dog would be picked up in the
morning for quarantine as neither the Humane Society nor the dog warden were then available.
After being transported to the station, Plaintiff was released from police custody at
approximately 8:00 p.m.  Plaintiff was later charged with Aggravated Assault, 18 P.S. § 2702
(a)(3), and Disorderly Conduct, 18 P.S. § 5503 (a)(3).  Officer Foltz also filed an Affidavit of
Probable Cause.  (Defendants Concise Statement of Material Facts, Doc. No. 11 at ¶¶ 38-41, 43,
46, 48, 49, admitted by Plaintiff at Plaintiff's Response to Defendants' Motion for Summary
Judgment, Doc. No. 13-1.)

   The charge against Plaintiff for Aggravated Assault was dismissed.  The charge
for Disorderly Conduct was held for trial.  Eventually, Plaintiff agreed to a mental health
evaluation.  Thereafter, on May 3, 2005, the District Attorney filed a Petition for Nolle Prosequi

---

[2]After listening to the tape during her deposition, Plaintiff testified that she was on the
phone speaking with the 9-1-1 operator at the same time that Officer Foltz arrested her while
allegedly using excessive force.  (Defendants' Concise Statement of Material Facts, Doc. No. 11
at ¶ 34; admitted by Plaintiff at Plaintiff's Response to Defendants' Motion for Summary
Judgment, Doc. No. 13-1 at 16.)

"for the reason that the defendant has passed the Mental Health evaluation." The Petition was granted on May 5, 2005. (Defendants' Concise Statement of Material Facts, Doc. No. 11 at ¶¶ 51, 53, 55, admitted by Plaintiff at Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. No. 13-1.)

Plaintiff selected Dr. Marilyn Kalish from the phone book to perform the mental evaluation. (McDonald Dep., Doc. No. 13-2 at 165-66.) Dr. Kalish completed a five page evaluation of Plaintiff wherein she noted under "impulse control" that Plaintiff "not violent, rarely raises voice." Dr. Kalish also noted the following under "strengths:" "Intelligent calm single parent who seems involved with children. Has support of family and friends." Kalish indicated "no diagnosis or condition," and stated the following with regard to a proposed treatment plan: "No need for further sessions unless current problems with Officer Foltz causes increased anxiety and symptomatology. (Kalish Mental Evaluation, Doc. No. 10-7 at 12-17.)

2.      Other Relevant Background Facts

Prior to June 21, 2004, Officer Foltz had been to McDonald's home "a couple different times" for complaints that she had about her neighbor, Gary Gabauer. One incident, which "was a couple years ago probably" involved McDonald's belief that Gabauer was poaching. Although she did not witness Gabauer killing any deer, her dogs were "bringing back pieces of deer" and she saw "bones . . . laying around" his property. Officer Foltz responded to the complaint, spoke with Mr. Gabauer first, and then spoke with McDonald. According to McDonald, Foltz told her that "[t]here was nothing he could do about it" and that "he didn't see anything." The other incident, according to McDonald, was "maybe three years ago" and involved an allegation by her son that Mr. Gabauer tried to run him off the road. No criminal

charges were filed and there was no follow-up contact with Foltz.  (Defendants' Concise

Statement of Material Facts, Doc. No. 11 at ¶¶ 59-62, admitted by Plaintiff at Plaintiff's

Response to Defendants' Motion for Summary Judgment, Doc. No. 13-1.)

Plaintiff also testified that upon responding to one of Plaintiff's complaints, Foltz

indicated that "if there was a problem up here again, he wasn't going to be happy."  (McDonald

Dep., Doc. No. 13-2 at 50-51.)  Plaintiff also testified that "the times [Foltz] did come to my

home, he wasn't very happy.  Like he seemed aggravated to have to respond to the calls."

(McDonald Dep., Doc. No. 13-2 at 57.)

Finally, Plaintiff further testified regarding specific instances where Officer Foltz

allegedly treated she and her family differently because her children are biracial.  Specifically,

Plaintiff indicated that Foltz allegedly harassed her son at school for making too much noise

while playing basketball.  (McDonald Dep., Doc. No. 10-6 at 25.)  In addition, Plaintiff testified

regarding Foltz's aggressive behavior towards her son.  (McDonald Dep., Doc. No. 13-2 at 71-

74, 80-84.)


B.    Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the

nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Summary judgment

may be granted against a party who fails to adduce facts sufficient to establish the existence of

any element essential to that party's case, and for which that party will bear the burden of proof

at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material

fact.  Once that burden has been met, the nonmoving party must set forth "specific facts showing

that there is a genuine issue for trial" or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis added by

Matsushita Court).  An issue is genuine only "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248

(1986).  While any evidence used to support a motion for summary judgment must be

admissible, it is not necessary for it to be in admissible form.  See Fed.R.Civ.P. 56 (e); Celotex

Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524,1542 (3d Cir.

1990).


    C.    <u>Analysis</u>

    Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or any other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.  Thus, to state a claim for relief under this provision, the Plaintiff must

demonstrate that the conduct in the complaint was committed by a person or entity acting under

color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities

secured by the Constitution or the laws of the United States.  Piecknick v. Commonwealth of

Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

              Qualified Immunity

              State officials performing discretionary acts enjoy "qualified immunity" from

money damages in § 1983 causes of action when their conduct does not violate "clearly

established" statutory or constitutional rights of which a "reasonable person" would have known

at the time the incident occurred.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The first

inquiry under a qualified immunity analysis is whether the plaintiff has established a violation of

a "clearly established constitutional right."

> The contours of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.  This is not to say that
> an official action is protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to say that in the light of pre-
> existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

              The second inquiry concerns the reasonableness of the defendant's actions.  The

test for qualified immunity is based on objective reasonableness, that is , "whether a reasonable

officer could have believed [the challenged action] to be lawful, in light of clearly established

law and the information the [ ] officers possessed."  Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d

Cir. 1994) (quoting Anderson v. Creighton, 483 U.S. at 641).  "The ultimate issue is whether,

despite the absence of a case applying established principles to the same facts, reasonable

officers in the defendants' position at the relevant time could have believed, in light of what was

in the decided case law, that their conduct was lawful."  Giuffre, 31 F.3d at 1255 (internal

quotation omitted).  It is the defendant's burden to establish that they are entitled to qualified

immunity.  See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989).

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court clarified the two-step qualified immunity inquiry.  The Court directed that , in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right."  <u>Id</u>. at 201.  If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary.  <u>Id</u>.  If the plaintiff's factual allegations do show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right.  <u>Id</u>. at 201-02.

    1.  <u>Fourth Amendment Claims</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . .."  This provision has been made applicable to the states by the Fourteenth Amendment.  <u>Ker v. California</u>, 374 U.S. 23, 30 (1963).

The Plaintiff contends that the Defendants violated her Fourth Amendment rights when Officer Foltz entered her home without a warrant, when he seized or falsely arrested Plaintiff, when he allegedly used excessive force, and when he allegedly filed false charges against her (malicious prosecution).

    a.  <u>Warrantless Entry Claim</u>

The United States Supreme Court has stated that the "physical entry of the home

is the chief evil against which the wording of the Fourth Amendment is directed."  United States

v. United States District Court, 407 U.S. 297, 313 (1972).  The Fourth Amendment's warrant

requirement serves to protect against unnecessary intrusions into a private residence by agents of

the government for purposes of search or arrest.  See Johnson v. United States, 333 U.S. 10, 13-

14 (1948).  To this end, the United States Supreme Court has stated that "searches and seizures

inside a home without a warrant are presumptively unreasonable."  Payton v. New York, 445

U.S. 573, 586 (1980).  In Payton, the United States Supreme Court held that warrantless felony

arrests in the home are prohibited by the Fourth Amendment absent probable cause and exigent

circumstances.  445 U.S. at 583-90.  In evaluating the kind of exigent circumstances that would

justify a warrantless home entry, the United States Supreme Court, in Welsh v. Wisconsin,

commented as follows:

> Our hesitation in finding exigent circumstances, especially when warrantless
> arrests in the home are at issue, is particularly appropriate when the underlying
> offense for which there is probable case to arrest is relatively minor.  Before
> agents of the government may invade the sanctity of the home, the burden is on
> the government to demonstrate exigent circumstances that overcome the
> presumption of unreasonableness that attaches to all warrantless home entries.
> When the government's interest is only to arrest for a minor offense, that
> presumption of unreasonableness is difficult to rebut, and the government usually
> should be allowed to make such arrests only with a warrant issued upon probable
> cause by a neutral and detached magistrate.

Welsh v. Wisconsin, 466 U.S. 740, 750 (1984) (citations and footnote omitted) (emphasis

added).  The Welsh Court held that there were no exigent circumstances to justify the officers'

warrantless entry into defendant's home to arrest him for a traffic offense.[3]  466 U.S. at 753-54.

---

[3]"Recognized exigent circumstances include hot pursuit of a suspect into his home, the
risk of destruction of evidence, potential escape of suspects, and threats of physical harm to law
enforcement officers or other innocent individuals."  United States v. Halley, 841 F. Supp. 137,

According to Plaintiff, she had offered Foltz an explanation as to why she could not produce the registration papers when requested, and indicated that she would find them and turn them over later that day.  Clearly, at this point, there are issues of material fact as to whether probable cause to arrest or exigent circumstances existed.  Yet, according to Plaintiff, at this time, Foltz's hand, arm, and leg were inside the door[4].  Plaintiff's daughter, Williams, similarly testified that at this moment she witnessed Foltz's foot inside the house and on the carpet. Williams further testified that Foltz's left shoulder and arm were also inside the house and his hand was pressed against the door window.  Drawing all inferences in favor of the Plaintiff, genuine issues of material fact exist as to whether, at this point, Officer Foltz violated Plaintiff's Fourth Amendment right prohibiting warrantless entry.

Likewise, Defendant Foltz should not be granted qualified immunity on this claim.  Pursuant to Saucier v. Katz, 533 U.S. at 201, this Court must view the facts in the light most favorable to the Plaintiff, the party asserting injury.  As discussed above, the facts viewed in the light most favorable to Plaintiff, show that a reasonable jury could conclude that Foltz violated her Fourth Amendment right to be free from warrantless entry into the home, and such right was clearly established at the time of the events in question.  That is, the contours of this right were already delineated with sufficient clarity by June 21, 2004, to make a reasonable

---

139 (M.D. Pa. 1993) (citing United States v. Velasquez, 626 F.2d 314, 317 (3d Cir. 1980)).

[4]This statement is seemingly corroborated by Defendants' own Concise Statement of Material Facts as follows:
> 20.  McDonald attempted to close the door on Foltz, however, his hand and foot prevented the door from closing on him.

(Defendants' Concise Statement of Material Facts, Doc. No. 11 at ¶ 20) (citations omitted).

officer in Foltz's position aware that forcing his way into Plaintiff's home in the absence of exigent circumstances violated that right.  Qualified immunity on this claim should be denied.

Consequently, summary judgment as to Plaintiff's warrantless entry claim should be denied.

### b. Excessive Force Claim

In order to make out a claim for excessive force as an unreasonable seizure under the Fourth Amendment, Plaintiff must show that a seizure occurred and that it was unreasonable. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  Here, the parties do not dispute that there was a seizure of Plaintiff.  Consequently, the only issue before this Court on Defendants' Motion for Summary Judgment is whether the force used to effect the seizure was objectively reasonable.  The United States Court of Appeals for the Third Circuit has stated that whether the use of force is objectively reasonable is determined by analyzing several factors, including the following:

> [T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . [whether] the physical force applied was of such an extent as to lead to injury[,][5] . . .  the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997) (internal citations and quotations

---

[5]The Sharrar Court specifically stated that it did not agree "that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality."  128 F.3d at 822 (citations omitted).

omitted).  In addition, the United States Supreme Court has emphasized that each case alleging

excessive force must be evaluated under the totality of circumstances.  See Graham v. Connor,

490 U.S. 386, 396-97 (1989)[6].

Here, genuine issues of material fact exist as to whether the amount of force used

by Officer Foltz was excessive under the totality of circumstances.  According to Plaintiff, Foltz

sent Plaintiff flying backward where she hit a chair.  Upon entering the house with the arrival of

the second officer, Foltz grabbed Plaintiff, threw her down, striking her upper chest into her

table/chair with her knees striking the floor.  Yet, Plaintiff was charged with only Aggravated

Assault[7], and Disorderly Conduct, weighed approximately 118 lbs. as compared to the

approximately 300 lbs. of Officer Foltz, was accompanied only by her daughter, and was not

attempting to leave her residence.  In fact, according to Plaintiff, she was attempting to protect

herself from what she perceived at the time to be an inappropriate, and non consensual entry into

her residence by Officer Foltz.  The degree of force used by Officer Foltz was so intense that an

ambulance was necessary to address Plaintiff's complaint of chest pains.  Further, neither Officer

Foltz, nor the second officer on the scene, expressed any concerns that Plaintiff was armed.

---

[6]In Graham, the Supreme Court cautioned that in applying the objective reasonableness
test, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's
chambers," will be deemed unreasonable.  Instead, "[t]he calculus of reasonableness must
embody allowance for the fact that 'police officers are often forced to make split-second
judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount
of force that is necessary in a particular situation.'"  409 U.S. at 396-97 (internal quotations
omitted).

[7]According to Defendants, "[c]alling a simple assault upon a police officer aggravated
merely reflects the legislature's intent to punish this assault more severely than one committed
against a layperson."  (Defendants' Memorandum in Support of Motion for Summary Judgment,
Doc. No. 12 at 4 n. 1) (citing Commonwealth v. Marti, 779 A.2d 1177, 1183 (Pa. Super. 2001).  .

Under the totality of the circumstances test, Plaintiff did not pose an immediate danger to Officer

Foltz or to others.  Clearly, issues of material fact exist as to whether the force used to effect the

seizure was objectively reasonable.

   Qualified immunity as to this claim should also be denied.  Applying the facts in

the light most favorable to the Plaintiff, a reasonable jury could conclude that Plaintiff's Fourth

Amendment right prohibiting the use of excessive force was violated by Foltz.  Further, Sharrar

was decided well before the events of June 21, 2004, and consequently, the contours of the right

in issue here were clearly established at the time Foltz made his way into Plaintiff's home.  A

reasonable officer in Foltz's position would have been aware that his conduct in making his way

into Plaintiff's home and the degree of force used therein and immediately thereafter, violated

Plaintiff's Fourth Amendment right prohibiting the use of excessive force.

   Consequently, Defendants' Motion for Summary Judgment on Plaintiff's claim

for excessive force should be denied.

### c.  False Arrest Claim

   The Fourth Amendment's prohibition against unreasonable seizures protects

individuals from arrest without probable cause.  Orsatti v. New Jersey State Police, 71 F.3d 480,

482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a

police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude

that an offense has been committed by the person being arrested."  United States v. Myers, 308

F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  The law of the state

where the arrest occurred controls whether the arrest is valid.  Myers, 308 F.3d at 255 (citing Ker

v. California, 374 U.S. 23, 37 (1963)).  In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest."  Sharrar, 128 F.3d at 818 (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)).  Subjective intentions of police officers are irrelevant to a Fourth Amendment probable cause analysis.  Whren v. United States, 517 U.S. 806, 813 (1996).  Although generally a question for the jury in a Section 1983 claim, a district court may find the existence of probable cause as a matter of law on summary judgment, but only if the evidence, viewed most favorably to the Plaintiff, would reasonably support a finding that probable cause to support the arrest did exist.  See Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998); Estate of Smith v. Marasco, 318 F.3d 497, 514, 514 (3d Cir. 2003).

        Whether it would have been clear to a reasonable officer that probable cause justified the arrest requires an examination of the crimes in issue.  Plaintiff was charged with Disorderly Conduct under Pennsylvania Criminal Code, 18 Pa. C.S. § 5503 (a) (3) which provides as follows:

> (a) Offense defined. - A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>                        . . .
> (3) uses obscene language, or makes an obscene gesture.

18 Pa. C.S. § 5503 (a) (3).  Pursuant to the language of the statute, whether "words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance."  Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999).  Here, the parties dispute whether Plaintiff ever used obscene language toward Officer Foltz to support the charge of Disorderly Conduct.  Further, issues of material fact exist as to whether a reasonable officer

could believe that Plaintiff's conduct "caused or unjustifiably risk[ed] a public disturbance" where the facts and circumstances occurred inside, and in front of, Plaintiff's residence.

Plaintiff was also charged with Aggravated Assault pursuant to 18 Pa. C.S. § 2702 (a) (3) which provides in relevant part as follows:

> (a) Offense defined. – A person is guilty of aggravated assault if he:
> (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;
> . . .
> (c) Officers, employees, etc., enumerated. – The officer, agents, employees and other persons referred to in subsection (a) shall be as follows:
>     (1) Police officer.

18 Pa C.S. § 2702 (a)(3) & (c)(1).  Taken in the light most favorable to Plaintiff, the evidence here, viewed under the totality of circumstances, does not support a finding that a police officer of reasonable caution, could have concluded that Plaintiff's momentary grasp of Foltz's arm in an effort to break her fall constituted an Aggravated Assault in that she was attempting to cause bodily injury to Officer Foltz.  Consequently, genuine issues of material fact exist as to whether, based upon the totality of circumstances including the objective facts available to Foltz at the time of the arrest, a person of reasonable caution could conclude that an offense had been committed by the Plaintiff and Defendants' Motion for Summary Judgment on the issue of false arrest should be denied.

Further, Foltz's claim of qualified immunity should also be denied.  As discussed above, a reasonable jury could conclude that Plaintiff's Fourth Amendment right prohibiting arrest except on probable cause was violated by Foltz.  There is no question that the right to be free from arrest except on probable cause was clearly established at the time of Plaintiff's arrest.  See Orsatti, 71 F.3d at 483.  A reasonable officer, in Foltz's position, would have been aware

18

that an arrest for Disorderly Conduct and Aggravated Assault, under these circumstances, violated the Plaintiff's Fourth Amendment rights.  Hence, Defendant Foltz's claim of qualified immunity should be denied as to Plaintiff's Fourth Amendment claim for false arrest.

### d.  Malicious Prosecution

Defendants move for summary judgment on Plaintiff's malicious prosecution claim and argue the following: 1) Plaintiff was not "seized" as a result of the legal proceeding; and 2) Plaintiff cannot prove the common law elements of malicious prosecution under Pennsylvania law.  In response thereto, Plaintiff contends that she "was arrested, cuffed, processed, had to appear at [sic] series of court hearings, a psychiatrist evaluation, and pay court costs and attorneys fees . . .."  (Doc. No. 13-1 at 17.)  She also argues that the charges filed against her were dismissed and "[t]he matter ended in her favor . . .."  (Doc. No. 13-1 at 17.)

Since the United States Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), the United States Court of Appeals for the Third Circuit has been examining the impact of Albright upon § 1983 malicious prosecution jurisprudence.  Prior to Albright, the Third Circuit "had always assumed that by proving a violation of the common law tort [of malicious prosecution], the plaintiff proved a violation of substantive due process that would support a § 1983 claim for malicious prosecution . . .."  Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002).  In Albright, the United States Supreme Court held that substantive due process would not provide a basis for relief, and intimated, that the Fourth Amendment would.  Albright, 510 U.S. at 274-75.  In Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), the Third Circuit, in considering Albright's impact, noted the following:

> Albright implies that prosecution without probable cause is not, in and of itself, a
> constitutional tort.  Instead, the constitutional violation is the deprivation of

> liberty accompanying the prosecution.  Thus, . . . a plaintiff asserting a malicious
> prosecution claim must show some deprivation of liberty consistent with the
> concept of seizure.

161 F.3d at 222 (internal citations and footnote omitted).

In Gallo, the § 1983 Plaintiff had been indicted by a federal grand jury for arson in the underlying criminal proceeding.  161 F.3d at 219.  "He never was arrested, detained, or handcuffed" following the indictment, but restrictions were imposed upon him including the following: he was required to post a $10,000 bond; he was required to attend all court hearings including trial and arraignment; "he was required to contact Pretrial Services on a weekly basis; and he was prohibited from traveling outside New Jersey and Pennsylvania."  Id. at 219, 223. The United States Court of Appeals for the Third Circuit found that, "although it is a close question," these restrictions amounted to a seizure.  Id.  The Court relied, in part, upon the decisions of the United States Supreme Court involving the concept of "seizure."  Id. at 223 (citing California v. Hodari D., 499 U.S. 621, 625-27 (1991) ("seizure is a show of authority that restrains the liberty of a citizen;" actual physical touching is not required); County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (seizure is "government termination of freedom of movement intentionally applied")).  In addition, the Court of Appeals noted that seizures may be of different intensities, and that restrictions may amount to a seizure even though the same restrictions do not amount to an arrest.  Gallo, 161 F.3d at 223.

Here, the Defendants attempt to distinguish Gallo by arguing that even though the restrictions in Gallo amounted to a seizure, the restrictions placed upon Plaintiff here were far less significant.  (Defendants' Memorandum in Support of Summary Judgment, Doc. No. 12 at 9.)  Specifically, Defendants argue as follows:

McDonald was detained for a period of no more than a few hours and
subsequently was required to attend criminal proceedings.  There was no bond,
travel restrictions, or other pretrial restrictions on her freedom.  In accordance
with the teachings of <u>Gallo</u>, this "legal proceeding" is insufficient to establish a
seizure.

(Defendants' Memorandum in Support of Motion for Summary Judgment, Doc. No. 12 at 9.)

Here, Plaintiff's claim for malicious prosecution is deficient in that she has failed

to show that she suffered a deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding.  Although Plaintiff's arrest, and subsequent detentions in the

police vehicles and at the police station amounted to a seizure within the meaning of the Fourth

Amendment, they were not made pursuant to a warrant, and occurred almost ten (10) days prior

to the filing of the criminal complaint.  Consequently, these seizures cannot support Plaintiff's

malicious prosecution claims as they did not occur pursuant to legal process.  <u>See</u> <u>Laufgas v.</u>

<u>Patterson</u>, 2006 WL 3320153 (3d Cir. November 16, 2006) (citing <u>Nieves v. McSweeney</u>, 241

F.3d 46, 54 (1st Cir. 2001) ("Appellants were arrested without a warrant and, thus, their arrests –

which antedated any legal process – cannot be part of the Fourth Amendment seizure upon

which they base their § 1983 [malicious prosecution] claims.")); <u>Estate of Smith v. Marasco</u>, 227

F. Supp.2d 322, 346-48 (E.D. Pa. 2002), <u>rev'd on other grounds</u>, 318 F.3d 497 (3d Cir. 2003).  In

addition, pursuant to the teachings of <u>Gallo</u> and the fact that the Court of Appeals viewed the

facts therein as a close case, Plaintiff's required attendance at court hearings here, without more,

cannot constitute a seizure.  She was not required to post bond; she was not required to contact

pretrial services, and no travel restrictions were imposed upon her.  <u>See</u> <u>Gallo</u>, 161 F.3d at 223.

<u>See</u> <u>also</u> <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601-603 (3d Cir. 2005) ("Pretrial

custody and some onerous types of pretrial, non-custodial  restrictions constitute a Fourth

Amendment seizure.") (questioning Justice Ginsburg's concurring opinion in <u>Albright</u> relating to the concept of "continuing seizure" that Fourth Amendment protection extends from the initial arrest or seizure to the end of trial).  <u>Accord</u> <u>Holmes v. McGuigan</u>, 184 Fed. Appx. 149, 151 (3d Cir. 2006) (plaintiff did not suffer seizure for purposes of § 1983 malicious prosecution claim where only deprivation of liberty that resulted from traffic citation was requirement to appear in court); <u>Benard v. Washington County</u>, 2006 WL 3196513 (W.D. Pa. November 2, 2006) (Fourth Amendment seizure did not occur where plaintiff released on her own recognizance, required to notify court and bail authority if she changed address, and required to attend court proceedings).

Because Plaintiff has failed to demonstrate that she suffered a seizure as a consequence of a legal proceeding, this Court need not address Defendants' arguments concerning whether the criminal proceeding ended in Plaintiff's favor.  Likewise, this Court need not reach the issue of qualified immunity.

### 2.  Fourteenth Amendment Substantive Due Process

In her Response to Defendants' Motion for Summary Judgment, Plaintiff states that "[s]he presented evidence of a violation of Substantive Due Process, for entering the home without a warrant, and submits that the record will shock the conscience of a reasonable jury." (Doc. No. 13-1 at 17.)  Plaintiff's substantive due process argument appears to relate to Plaintiff's warrantless entry claim, and to the facts and circumstances giving rise to her excessive force claim.  Plaintiff's substantive due process claim should be dismissed with prejudice.

In <u>Graham v. Connor</u>, the United States Supreme Court stated that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed

under the specific constitutional provision rather than substantive due process.  490 U.S. 386, 395 (1989).  Specifically, the Court held the following:

> [A]ll claims that law enforcement officers have used excessive force -deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham, 490 U.S. at 395 (emphasis in original).  See Lanier v. United States, 520 U.S. 259, 272 n. 7 (1997).

Here, Plaintiff's claims for warrantless entry and excessive force must be analyzed under the standards appropriate to the Fourth Amendment, the specific constitutional provision applicable to her claims, not under the substantive due process clause.  Consequently, Defendants' Motion for Summary Judgment on Plaintiff's Substantive Due Process claim should be granted[8].

3.  First Amendment Claim

---

[8]In her Complaint, Plaintiff avers only that this "Court has jurisdiction pursuant to 42 U.S.C. § 1983 via the First, Fourth and Fourteenth Amendments (substantive due process clause) of the United States Constitution and the Bill of Rights."  In their Memorandum in Support of Motion for Summary Judgment, Defendants do not address a procedural due process claim.  Yet, in her Response to Defendants' Motion for Summary Judgment, Plaintiff states that "[s]he presented evidence of a Procedural Due Process violation for the acts and omissions of Foltz." (Doc. No. 13-1 at 17.)  This Court will not engage in a  procedural due process analysis as such claim does not appear to be included in Plaintiff's Complaint, and consequently, is not a basis for Defendants' motion.

In her Complaint, Plaintiff avers that Defendant Foltz retaliated against her "for exercising her right to free speech and political activity.  (Complaint, Doc. No. 1 at ¶ 63.)  In her response to Interrogatories propounded by Defendants, Plaintiff concedes that she "was not retaliated against politically."  (Plaintiff's Answers to First Set of Interrogatories and Request for Documents directed to Plaintiff, Doc. No. 10-7 at ¶ 13.)  Consequently, summary judgment should be granted on Plaintiff's First Amendment claim as it relates to retaliation for "political activity."

The remainder of Plaintiff's First Amendment claim concerns the alleged retaliation by Officer Foltz for Plaintiff's complaints to Foltz regarding her neighbor.

In order to establish a retaliation claim pursuant to the First Amendment, the Plaintiff must show that she engaged in a protected activity, that Officer Foltz responded with retaliation, and that the protected activity was the cause of the retaliation.  See Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).[9]

---

[9]Defendants argue that Plaintiff's claim for retaliation must fail because Plaintiff's complaints to Officer Foltz concerning her neighbor do not involve matters of public concern. (Defendants' Memorandum in Support of Summary Judgment, Doc. No. 12 at 12.)  In support of their assertion, Defendants cite to Feldman v. Community College of Allegheny County, 85 Fed. Appx. 821, 824-25 (3d Cir. 2004).  Defendants' reliance on the public concern analysis is misplaced.  The public concern analysis is limited to situations involving First Amendment retaliation in the area of public employment.  Generally, all speech is protected by the First Amendment, but for some narrowly drawn categories including obscenity, fighting words, and libel.  See R.A.V. v. St. Paul, 505 U.S. 377, 382-90 (1992).  In an effort to balance public employees' rights as citizens with their obligations to contribute to an agency's effective operation as public employees, the United States Supreme Court has granted public employers the right to regulate their employees' protected speech, except for those matters relating to public concern.  See Connick v. Myers, 461 U.S. 138, 145 (1983).  Consequently, the public concern requirement is inapplicable to the case at bar where the alleged retaliatory conduct did not arise in the public employment context.  See Eichenlaub v. Township of Indiana, 385 F.3d 274, 282-84 (3d Cir. 2004); see generally Marasco, 318 F.3d at 512-13 (no discussion of public concern where challenged conduct did not arise in public employment context); Barshinger v.

Here, material issues of fact exist as to whether Plaintiff's repeated complaints to Foltz regarding her neighbor were the cause of Foltz's alleged retaliatory actions on June 21, 2004.  The United States Court of Appeals for the Third Circuit has stated that "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997), quoted in, Marasco, 318 F.3d at 512.  Although the Third Circuit stated in Marasco that the time lapse between Smith's complaints concerning prior contacts with state police officers between 1991 and 1998, and the alleged retaliatory action beginning on July 10, 1999, was "not unusually suggestive of retaliation," the Court recognized that "timing plus other evidence may be an appropriate test" to establish causation.  Marasco, 318 F.3d at 512-13 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

Here, Plaintiff offers other evidence which raises an issue of material fact as to whether her complaints to Foltz were the cause for Foltz's conduct on June 21, 2004.  That is, Plaintiff testified that  upon responding to one of Plaintiff's complaints, Foltz indicated that "if there was a problem up here again, he wasn't going to be happy."  (McDonald Dep., Doc. No. 13-2 at 50-51.)  Plaintiff also testified that "the times [Foltz] did come to my home, he wasn't very happy.  Like he seemed aggravated to have to respond to the calls."  (McDonald Dep., Doc.

---

Buffington, 2004 WL 3607974 (June 10, 2004 M.D. Pa.) (no public concern analysis where alleged retaliatory conduct did not arise in public employment context); Mayer v. Gottheiner, 382 F. Supp. 2d 635, 647-48 & n. 20 (D.N.J. 2005) (public concern requirement not applicable to a non public employment context).  But see Feldman, 85 Fed. Appx. at 824-25 (not precedential) (Court applying public concern analysis to facts not involving a public employer and its employee).

No. 13-2 at 57.)

With regard to qualified immunity, however, this Court finds that the law in this Circuit was not clearly established at the time of the events in issue, especially as it relates to police retaliation for citizen challenges to police conduct:

> Actions taken by police officers in retaliation for citizen challenges to authority have been recognized by several circuit courts of appeal as properly subject to a First Amendment claim under § 1983.  McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir. 2001); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 418-19 (2d Cir. 1999); Knox v. Southwest Airlines, 124 F.3d 1103, 1107-08 (9th Cir. 1997).  Although the Third Circuit has not squarely confronted this issue, it has specifically cautioned district courts against allowing unsubstantiated First Amendment retaliation claims against police officers to proceed to trial, stating: "[O]fficers should not by reason of potential civil liability be discouraged from intervening when their services are needed by the not surprising circumstance that a claim has been lodged against a person with whom they have had previous adverse dealings.  Society may pay a high price if officers do not take action when they should do so."

Walker v. North Wales Borough, 395 F. Supp 2d 219, 228 (E.D. Pa. 2005) (quoting Marasco, 318 F.3d at 513).  Because the law in this Circuit surrounding actions taken by police officers in retaliation for challenges to authority was not so clearly established at the time of the events in question, a reasonable police officer in Officer Foltz's position may not have been aware that his conduct violated Plaintiff's First Amendment rights.

Consequently, Defendants' Motion for Summary Judgment relating to Plaintiff's First Amendment retaliation claim should be granted on the basis of qualified immunity.

### 4.  Equal Protection

The Fourteenth Amendment to the United States Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the

laws."  U.S. Const. amend. XIV, § 1.  The purpose of the Equal Protection clause "is to measure the validity of classifications created by state laws."  <u>Parham v. Hughes</u>, 441 U.S. 347, 358 (1979).  In this way, it serves to protect against intentional and arbitrary discrimination, whether brought about by the express terms of the statute in question, or by the improper application of the statute by actors of the State.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (quoting <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441, 445 (1923), and <u>Sunday Lake Iron Co. v. Twp. of Wakefield</u>, 247 U.S. 350, 352 (1918)).  That is, "the Equal Protection clause provides a basis for challenging legislative classifications that treat one group of persons differently than another group of similarly situated persons, and for contending that general rules are being applied in an arbitrary or discriminatory way."  <u>Volk v. Heydt</u>, 1997 WL 27100 *6 (E.D. Pa.) (citing <u>Jones v. Helms</u>, 452 U.S. 412 (1981) and <u>Yick Wo v. Hopkins</u>, 118 U.S. 356 (1886)).  If a legislative classification does not burden a fundamental right nor target a suspect class, the legislative classification will be upheld if it bears a rational relationship to some legitimate end.  <u>Vacco v. Quill</u>, 521 U.S. 793, 800 (1997) (quoting <u>Romer v. Evans</u>, 517 U.S. 620, 631 (1996)).  A classification bears a rational relationship to some legitimate end if it classifies "the persons it affects in a manner rationally related to legitimate governmental objectives."  <u>Murillo v. Bambrick</u>, 681 F.2d 898, 905 (3d Cir. 1982) (quoting <u>Schweiker v. Wilson</u>, 450 U.S. 221, 230 (1981)).

Here, Plaintiff cannot support her claim for violation of equal protection and concedes as much in her responsive brief.  <u>See</u> Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. No. 13-1 at 18.  Consequently, Defendants' Motion for Summary Judgement on Plaintiff's Equal Protection claim should be granted.

5.  <u>Municipal Liability</u>

With regard to the Township, Plaintiff avers the following in her Complaint:

62.  The Township: (1) knew that Foltz habitually uses excessive force from past complaints and incidents and has failed to take effective remedial action; (2) through its deliberate lack of action, tacitly approved of Foltz's continuing pattern and practice of constitutional misconduct, harassment, recklessness and excessive force; (3) did not train, supervise, discipline Foltz and (4) investigate complaints.

(Complaint, Doc. No. 1 at ¶ 62.)

In <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.  In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior.  Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  <u>Monell</u>, 436 U.S. at 694.  The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible.  <u>Id</u>.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation.  <u>Id</u>. at 690-91.  A municipal policy is made when a decision-maker issues an official proclamation or decision.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986), <u>quoted in</u>, <u>Andrews v.</u>

28

<u>City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law.  <u>Andrews</u>, 895 F.2d at 1480.  To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.  <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000).  Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right.  <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850-51 (3d Cir. 1990).  That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation.  <u>Bielevicz</u>, 915 F.2d at 850-51.  "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury."  <u>Id</u>. at 851 (citing <u>Black v. Stephens</u>, 662 F.2d 181, 190-91 (3d Cir. 1981), <u>cert. denied</u>, 455 U.S. 1008 (1982)).

Municipal liability can be predicated upon a failure to train.  <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989).  A municipality is only liable for failing to train, however, when that "failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1028 (3d Cir. 1991) (hereinafter "<u>Colburn II</u>") (quoting <u>City of Canton</u>, 489 U.S. at 388).

In discussing liability for a failure to train claim in the context of a prison suicide case, the United States Court of Appeals for the Third Circuit has stated the following:

> <u>City of Canton</u> teaches that municipal liability for failure to train cannot be predicated solely on a showing that the City's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional

> injury.  A § 1983 plaintiff pressing a claim of this kind must
> identify a failure to provide specific training that has a causal
> nexus with his or her injury and must demonstrate that the failure
> to provide that specific training can reasonably be said to reflect a
> deliberate indifference to whether constitutional deprivations of
> the kind alleged occur.  In a prison suicide case, this means that the
> plaintiff must (1) identify specific training not provided that could
> reasonably be expected to prevent the suicide that occurred, and
> (2) must demonstrate that the risk reduction associated with the
> proposed training is so great and so obvious that the failure of
> those responsible for the content of the training program to provide
> it can reasonably be attributed to a deliberate indifference to
> whether the detainees succeed in taking their lives.

Colburn II, 946 F.2d at 1029-30.  See also Woloszyn v. County of Lawrence, 396 F.3d 314, 324-

25 (3d Cir. 2005) (discussing Colburn II on appeal of granting of summary judgment).

　　　　　With regard to supervisory liability, the Court of Appeals for the Third Circuit set

forth the standard for imposing liability against a supervisor under § 1983 in Sample v. Diecks,

885 F.2d 1099 (3d Cir. 1989).  Relying on the precepts set forth by the United States Supreme

Court in City of Canton v. Harris, 489 U.S. 378 (1989), the Sample court noted that

"a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate,

unless that 'person'–whether a natural one or a municipality–has exhibited deliberate

indifference to the plight of the person deprived."  Sample, 885 F.2d at 1117-18.  The Court

continued that in order to establish supervisory liability, the plaintiff must identify a specific

supervisory practice or procedure that the defendant failed to employ, that the existing custom or

practice without that specific practice or procedure created an unreasonable risk of harm, that

defendant was aware that this unreasonable risk existed, that defendant was indifferent to that

risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory

practice or procedure.  885 F.2d at 1118.  As to causation, the Sample court concluded as

follows:

> On remand, the district court should bear in mind that under the teachings of <u>City of Canton</u> it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did.  The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference.  Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."

<u>Sample</u>, 885 F.2d at 1118.

Here, in support of her claims for municipal liability, Plaintiff states that "[t]he Township should have also been aware, as their officers were, of Foltz's reputation in the community for excessive force and entering homes without probable cause."  (Plaintiff' s Response to Defendants' Motion for Summary Judgment, Doc. No. 13-1 at 17.)  In support of this assertion, Plaintiff only offers her own deposition testimony as to what Officers Deluca, Washington, and Lockhart told her regarding Officer Foltz.  (Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. No. 13-1 at 17.)  She does not offer affidavits of these individual officers, nor does she offer any evidence to suggest that a township "decision-maker" had notice of Officer Foltz's alleged unconstitutional behavior, and that the decision-maker acted with deliberate indifference to this risk.  <u>See</u> <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000).  In addition, she has not identified the specific training the Township was deficient in providing, and how the Township was deliberately indifferent in not providing it.  Finally, Plaintiff has offered no evidence in support of her failure to supervise claim.

Consequently, Defendants' Motion for Summary Judgment with regard to municipal liability should be granted.

31

III.     <u>CONCLUSION</u>

It is recommended that the Defendants' Motion for Summary Judgment at Doc. No. 10 be granted insofar as it relates to Plaintiff's claims filed pursuant to the Fourteenth Amendment Substantive Due Process Clause, the Equal Protection Clause, First Amendment Retaliation claim, Fourth Amendment Malicious Prosecution claim, and Municipal Liability.  It is also recommended that Defendants' Motion for Summary Judgment at Doc. No. 10 be denied insofar as it relates to Plaintiff's claims filed pursuant to the Fourth Amendment including warrantless entry, excessive force, and false arrest.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


 s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: December 21, 2006

cc: The Honorable David S. Cercone

    All counsel of record